# CASES

## ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY,

### OCTOBER TERM, 1843.

---

## The EXECUTORS of JOB JOHNSON v. WILLIAM KETCHUM et al.

After an award has been executed, the court will not set it aside upon the ground that the arbitrators were not sworn.

Where an account has been settled by arbitrators, and a bond and mortgage given for the sum awarded to be due, the court will not, except in case of gross wrong, permit the account to be re-investigated, or the validity of the award to be contested.

*J. W. Miller* and *Dayton*, for complainants.

*Saxton* and *W. Halsted*, for defendants.

Cases cited by complainants' counsel. *4 Kent's Com.* 377; *2 Ibid*, 208; *3 Mer.* 704; *16 Vesey*, 144; *5 John.* 354.

Cases cited by defendants' counsel. *1 Ld. Ray.* 133; *2 Saund.* 337; *Cro. Eliz.* 4, 758; *5 Coke*, 78, *b.*; *Salk.* 74; *1 Chan. Cas.* 185; *Cro. Jac.* 639, 640; *Tidd on Awards*, 146, 249; *2 Mass.* 164; *8 Mass.* 399; *10 Mass.* 442; 6

*John.* 13, 39 ; 11 *John.* 183 ; 13 *John.* 27, 187 ; 1 *Binney*, 108 ;
*Saxton*, 122 ; 2 *Jac. Law Dic. " Dilapidation ;"* 22 *Viner's
Ab.* 434, 446 ; 11 *Coke*, 82.

THE CHANCELLOR. This bill is filed to foreclose a mort-
gage, given on the second of April, eighteen hundred and
thirty-eight, by William Ketchum and wife, and Nathaniel
Saxton, to James Johnson, and by him assigned to Job John-
son. The mortgage was made to secure a bond between the
same parties, conditioned for the payment of two thousand two,
hundred and seventy-seven dollars and seventy-three cents, in
one year.

Two points are made by the defendants, Ketchum and Sax-
ton, in this case.

First, that the bond and mortgage were given for too much,
by a fraud practised on them at the time of their execution.
The history of the transaction is somewhat curious, and there
is enough in the case, unexplained, to create doubt and distrust
in the minds of the defendants. The property mortgaged,
seems long to have been the subject of angry contention, and
while an ejectment between John A. Johnson and James John-
son was pending in the court of appeals, a proposition for settle-
ment was made, by which William Ketchum, the son-in-law of
John A. Johnson, was to become the purchaser from James
Johnson. By the agreement, he was to pay what James John-
son paid for the property, with interest, and to allow him a fair
and full compensation for all permanent and substantial repairs
which he had made on the premises while he occupied them,
and Johnson was to be charged with a fair rent. One half the
amount was to be paid in cash, and the other half secured by
mortgage on the property. The agreement was reduced to
writing, and bears date the nineteenth of January, eighteen
hundred and thirty-eight. Under this agreement, the parties
settled the amount due to James Johnson, and on his statement
fixed the price he paid for the property, at two thousand eight
hundred and thirty-nine dollars and forty-three cents. This

31*

sum was, of course, the basis on which the present mortgage was given. It is now said by the defendants, that Johnson did not pay that amount for the property, but five hundred dollars less. This is a question of fact, and must depend on the proof. If this was the truth of the case, it undoubtedly should be rectified. After carefully looking into the papers and the evidence, I am not satisfied that any fraud has been practiced, but it would seem to me, that Johnson did give for the property, the very sum stated by him. He purchased from the Hickses. These gentlemen, who resided in the state of New-York, had a mortgage many years prior to this time, on the same premises, which premises are called the Tunison farm, and consist of one hundred and eighty-six acres, and also on another lot of thirty-three acres, called the Johnson lot. This mortgage was given by John A. Johnson, the then owner, and probably for money lent. The Hickses foreclosed their mortgage, and at the sheriff's sale became the purchasers. They did not want the land, but their money, and were anxious to sell the property again. While the Hicks mortgage was outstanding, unpaid, John A. Johnson, the owner of the equity of redemption, sold to Job Johnson, his brother, the thirty-three acres for full value, and got his pay for it, without giving information of the mortgage; who afterwards discovered that his land was subject to the Hicks mortgage and his money was lost. Job Johnson being thus circumstanced, applied to Job Halsted, esq., who conducted the business for the Hickses, and stated to him the situation in which he was placed. Mr. Halsted told him that the Hickses only wanted their money, and if they could sell the Tunison farm for what was due them, they would release the thirty-three acre lot to him. Job Johnson upon this, interested himself for the sale of the farm, and got his brother James to become the purchaser. The Hickses accordingly agreed to convey the Tunison farm to James Johnson for the amount due them, being two thousand eight hundred and thirty-nine dollars and forty-three cents, and by the same agreement, stipulated to quit claim the thirty-three acres to Job Johnson.

The idea of the defendants is, that the thirty-three acres passed by the same consideration, and reduced the amount paid for the Tunison farm by the value of that lot, which was five hundred dollars. The whole case shows this was not so, but on the contrary, that James Johnson really paid the whole amount for the Tunison farm alone; the transaction was honorable and just in all respects. Job Johnson had been deceived by finding a mortgage on the lot he purchased, and the Hickses manifesting a proper spirit, agreed to give up their claim on his lot, if he procured a purchaser for the remainder, for an amount sufficient to pay their demand. The article of agreement between the Hickses and James Johnson, drawn up under the direction of Job S. Halsted, esquire, and signed by him in their behalf, fully establishes this view of the transaction. That agreement bears date the seventeenth of October, eighteen hundred and twenty-eight, and it distinctly binds the Hickses to sell the Tunison farm and nothing else, to James Johnson, for two thousand eight hundred and thirty-nine dollars and forty-three cents, one thousand dollars of which sum to be paid in cash, and the balance secured by a bond of Job and James Johnson, and a mortgage on the same property. The mortgage back did not cover the thirty-three acres. At the close of the agreement, and after every provision had been made relating to the sale with James Johnson, there is an independent clause, which stipulates that when this arrangement is completed, the Hickses will quit claim the thirty-three acres to Job Johnson. The papers show that the agreement was carried into effect precisely according to its terms. It must be borne in mind, that this agreement was made many years ago, and when no motive existed, so far as is known, for using any deception in its terms, or in the manner of drawing it up. The agreement would of itself, therefore, be sufficient to satisfy me of the true character of the transaction; but there is other evidence. Job S. Halsted, who is a cautious witness, and especially so in speaking of transactions of many years standing, yet is sufficiently explicit to show that his impressions are all with this view of the subject.

But further, after the present bill was filed, the defendants filed a cross bill for the purpose of obtaining an injunction, to prevent the defendant, Job Johnson, from prosecuting the bond and mortgage at law, pending this suit, and set out substantially the same facts as are contained in their answer. To that cross bill, both Job Johnson and James Johnson filed a full answer under oath, declaring the transaction to be in conformity with the written agreement, and that James Johnson did pay all the money for the Tunison farm alone. They are entitled to the benefit of that answer. This answer explains, too, another part of the case: the deed from the Hickses to James Johnson, covers both lots, and then James Johnson conveys to Job the thirty-three acres. This is different from the agreement, and unexplained, would favor the view taken by the defendants; but they both swear it was so done merely to save the necessity of the Hickses making two deeds, and that the consideration of one hundred dollars named in the deed from James to Job, was never paid or intended to be, but was placed there alone to comply with the forms of law. My impressions from the pleadings and evidence being, that James Johnson paid for the Tunison farm alone, the sum stated by him, and which is carried into the mortgage, the first objection taken by the defendants must fail.

The second point urged by the defendants, has grown out of the second clause in the agreement of the nineteenth of January, eighteen hundred and thirty-eight. In adjusting the amount, William Ketchum was to pay James Johnson for the Tunison farm; this clause provided that James Johnson should be allowed "a fair and full compensation for all permanent and substantial repairs which he had made on the said premises while he occupied the same, and allow a fair and full rent for the said premises while he held and occupied the same," to be ascertained, in case of dispute, by two respectable men, to be chosen one by each party, and if they could not agree, those two were to choose a third. The parties, Ketchum and Johnson, got together to carry out this part of the agreement, and

not being able to agree, each selected a man, and they not agreeing, chose a third, who finally settled the amount that Johnson should be allowed for repairs and charged for rent under this clause, and reduced the same to writing in the shape of an award. This award is, I find, signed by all the men. It is now objected by the defendants, that the arbitrators were not sworn, that no witnesses were examined, and that the allowance made in favor of Johnson was illegal and unjust. It is entirely too late, in my opinion, at this time, to open this adjustment, and undertake to go into this account; it would be giving encouragement to perpetual litigation and strife. These parties met in a friendly spirit, selected respectable men, looked into the accounts, made their representations on both sides, the arbitrators being neighbors, understood much of their own knowledge, of the repairs which Johnson had made, and finally they submitted to the result to which the men arrived. The award was made on the sixth of February, and on the second of April thereafter, (nearly two months having intervened,) these defendants gave their bond and mortgage on the basis of this award. The bond and mortgage was subsequently assigned by James to Job Johnson, and when he prosecutes on it and attempts to recover the money, the defendants propose again to open the whole question and to go back to the consideration of all the matters settled by the arbitrators. The parties executed the award and acquiesced in the result, and should not be permitted to go into it again. If the defendants intended to dispute the doings of the arbitrators and the validity of their award, they should have done so before giving the bond and mortgage. They consummated the agreement, however, and the defendants went into possession of the premises. I do not mean to be understood as denying the power of this court to open this account in case of gross wrong, but it should certainly be a very strong case.

I do not perceive that a case of that character is here presented. There may have been some items not allowable under the strict legal construction of the terms of the contract, and yet

[Johnson's Ex'rs v. Ketchum et al.]

it is more than probable they came within the contemplation of the parties themselves. The design in the settlement was, undoubtedly, to reimburse Johnson for the cost and outlay on the property. The amount claimed by him, was reduced in almost every item, by the arbitrators, and the subject generally seems to have received from them an upright and careful consideration. To open it all again, I must think, would be oppressive and give undue encouragement to litigation.

There being, therefore, in my opinion, nothing in either of the grounds assumed by the defendants, the complainants are entitled to a decree for the amount due on their mortgage, when the same shall be ascertained by a master. There will be a reference accordingly.